H. MARVINE WOOD, AS SUPERINTENDENT OF THE POOR OF THE COUNTY OF DELAWARE, PLAINTIFF, *v.* CHARLES E. SIMMONS AND OTHERS, AS COMMISSIONERS OF PUBLIC CHARITIES, ETC., AND THE MAYOR, ETC., OF THE CITY OF NEW YORK, DEFENDANTS.

*Pauper — a day laborer, who supported his family in one county, until immediately after moving into another county he becomes disabled and a county charge, is not a pauper within chapter 486 of 1888.*

A day laborer, having a wife and family whom he supports by his wages, who moves from one county into another, and becoming disabled in the latter county becomes a county charge, is not a pauper within the provisions of the statute, providing that "any pauper so removed, brought or enticed, or who *shall of his own accord come or stray* from one city, town or county into any other city, town or county not legally chargeable with his support, shall be maintained by the county superintendent of the county where he may be," and that such county superintendent shall have a right of action over for the expense so incurred against the city, town or county from which he came.

APPLICATION for judgment in a controversy submitted upon admitted facts under section 1279 of the Code of Civil Procedure.

*J. B. Gleason*, for the plaintiff.

*W. L. Turner*, for the defendant.

VAN BRUNT, P. J.:

The plaintiff is a superintendent of the poor of Delaware county, in the State of New York. On the 17th of May 1883, and for six years immediately prior thereto, one Motolario had his residence in the city of New York, but during some parts of this time was employed as a day laborer on the line of the Ontario and Western Railway, a railway running through various counties of the State, and among them Delaware county. During this period Motolario maintained a wife and family in the city of New York, in the winter living with his wife and family, and when employed away from said city upon said railway, during other seasons of the year, sending his monthly wages to his wife for her support and that of his family. His only means of support were his wages as an ordinary day laborer. On or about the 1st of April, 1888, he came to the town of Sidney in the county of Delaware, and was there employed on the said

Ontario and Western Railway up to the 17th of May 1888, upon which day he was seriously injured by an accident, and it became necessary to forthwith amputate his right leg and left foot and to provide attendance for him. By reason of the accident Motolario became wholly without means to provide for himself, and application was immediately made to the plaintiff as superintendent of the poor in the county in which the accident happened, and thereupon he was relieved and assisted by the plaintiff as such superintendent and the expenses of his support and maintenance necessarily and actually made and paid out by the plaintiff, as such superintendent, were $430.51. Prior to the accident Motolario was an able-bodied man, earning wages sufficient, but not more than sufficient, to support himself and family without the need of any assistance from the authorities either of Delaware or New York counties, and he did not receive any assistance from said counties prior to said accident. On the 31st of May, 1888, the plaintiff served upon the Board of Charities and Corrections a notice, in writing, that they were required to provide for the relief and support of said pauper. The Board of Charities and Corrections did not, within thirty days, either take or remove Motolario to their county, or there support him or pay any of the aforesaid expenses of such notice or of the support of said Motolario. Upon the 11th of July 1888, the claim was presented to the corporation, and the comptroller refused to make any adjustment or payment of said claim.

In August, 1888, the plaintiff commenced an action against the Board of Commissioners of Charities and Corrections, to recover the aforesaid claim, which action was discontinued upon submission of the controversy. The questions submitted to the court upon this case are: Was Motolario a pauper, within the meaning of the statutes in such case made and provided? Is the said expense of $430.51 a proper charge against the city and county of New York?

The question, therefore, presented is whether the county of New York is liable for the support of each and every person who may be a resident within the city of New York, and who, while in another county, engaged in the earning of a livelihood for himself and family, has, by an accident occurring therein, become wholly incapable of providing for himself. The rights of the parties depend upon the Revised Statutes as enacted or codified in 1830, and as modified

by chapter 546 of the Laws of 1885; the amendment of chapter 486 of the Laws of 1888 not being applicable, as such amendment was made after the right of action herein accrued, if any. By section 31 of title 1 of chapter 20, part 1 of the Revised Statutes (1 R. S., 622), it is provided as follows: " No person shall be removed, as a pauper, from any city or town to any other city or town of the same or any other county, nor from any county to any other county, but every poor person shall be supported in the town or county where he may be, as follows: 1. If he hath gained a settlement in any town in such county, he shall be maintained by such town. 2. If he hath not gained a settlement in the county in which he shall become poor, sick or infirm, he shall be supported and relieved by the superintendents of the poor, at the expense of the county. 3. If such person be in a county where the distinction between town and county poor is abolished, he shall, in like manner, be supported at the expense of the county, and in both the cases aforesaid, proceedings for his relief shall be had as hereinafter directed. 4. If such pauper be in a county where the respective towns are liable to support their poor, and hath gained a settlement in some other town of the same county than that in which he may then be, he shall be supported at the expense of the town where he may be, and the overseers shall give notice, in writing, to the overseers of the town to which such pauper shall belong, or to any of them requiring them to provide for the relief and support of such pauper."

The remaining sections to which it is necessary to call attention are sections 58, 59, 60, 61 and 62 (1 R. S., 628, 629). Under these sections it has been decided, and it is conceded upon the part of the plaintiff, that if any pauper shall not have gained a settlement in the county in which he shall become poor, sick or infirm, the provision that "proceedings for his relief shall be had as hereinafter directed" were left without application. It is claimed, however, that this difficulty was remedied by chapter 546 of the Laws of 1885, which amended section 59 so as to read as follows: "*Any* pauper so removed, brought or enticed, *or who shall, of his own accord, come or stray from one city, town or county into any other city, town or county, not legally chargeable with his support*, shall be maintained by the county superintendents of the county where he may be." The portion in italics being the amendment.

Under this provision it is claimed that a liability, upon the part of the city of New York, exists in favor of the superintendent of the poor of Delaware county. This section reads: "Any pauper so removed (referring to § 58), brought or enticed, or who shall, of his own accord, come or stray from one city town or county into any other city, town or county not legally chargeable with his support shall be maintained by the county superintendents of the county where he may be." And such superintendents may give notice to the overseers of the poor of the town from which he was brought or enticed, if such town be liable for his support; and then by taking certain other proceedings they may fix the liability for such support upon said town or county. It is assumed by the plaintiffs that the words, "poor person," referred to in the statute, mean those who depend on their daily labor for their support. We think this is an erroneous construction in that the terms "poor person" and "pauper" are used interchangeably in the statute; and a person who has always supported his family and himself by his labor cannot be designated a pauper, nor is he such a poor person as is referred to in the statute as one liable to become a public charge. But in the section in question, by virtue of which the plaintiff claims, the words "poor person" are not used. The provision of the section is that any *pauper* who shall, of his own accord, come or stray from one county into any other county not legally chargeable with his support. This certainly does not mean an able-bodied man who has always maintained himself and family by his own exertions and who has come into another county and there, without fault upon his part, by means of an accident has become unable to support himself. Such a man is many degrees removed from the condition of a pauper, and it is only in case any pauper shall, of his own accord, come or stray from one city, town or county into any other city, town or county that the liability of the town or county from whence he came exists.

It seems to us that the amendment of 1885 in no way relates to the question now before the court. It in no way applies to such a person as this Motolario, and by no forced or strained construction of the statute can he be held to be deemed a pauper; and if he was not a pauper at the time he came or strayed into Delaware county, the city of New York is not liable for his maintenance and support

because of the accident which happened to him within the confines of that county, and which took away the means of earning his livelihood.

Judgment ordered for the defendant, with costs.

Brady and Daniels, JJ., concurred.

Judgment for the defendant, with costs.