The Town of Rhine vs. The City of Sheboygan.

The Town of Rhine, Respondent, vs. The City of She-
boygan, Appellant.

*May 4 — May 24, 1892.*

*Poor laws: Who are "poor persons."*

Where a married man has property of considerable value over and
above incumbrances, and which is not indispensable for daily use
but can be made available, by sale or by way of security, for the
support of himself and wife, they are not *poor persons* for whose
support the town in which they have a legal settlement is liable,
within the meaning of sec. 1513, R. S.

APPEAL from the Circuit Court for *Sheboygan* County.
The opinion states the facts. The defendant appeals
from a judgment in favor of the plaintiff.

*Carl Runge*, for the appellant, cited, besides cases cited
in the opinion, *Holland v. Belgium*, 66 Wis. 557, 560.

For the respondent the cause was submitted on the brief
of *Seaman & Williams*. They cited *Mappes v. Iowa Co.*
47 Wis. 31; *Saukville v. Grafton*, 68 id. 192; *McCaffrey v.
Shields*, 54 id. 645; 2 Abbott, Law Dict. 257, PAUPER; *Wal-
bridge v. Walbridge*, 46 Vt. 617; *Poplin v. Hawke*, 8 N. H.
305; *Wallingford v. Southington*, 16 Conn. 431; *Jasper Co.
v. Osborn*, 59 Iowa, 208; *Norridgewock v. Solon*, 49 Me. 385;

*Fiske v. Lincoln,* 19 Pick. 473; *Goodale v. Lawrence,* 88 N. Y. 513; *New Hartford v. Canaan,* 52 Conn. 158.

PINNEY, J. This action is brought by the town of *Rhine* against the city of *Sheboygan* to recover for relief furnished by the town to John Knoll and wife, as poor persons, while living in that town, but having a legal settlement in the city of *Sheboygan;* the town system of supporting the poor being in force in Sheboygan county.

The action is founded on R. S. sec. 1513, that, "if any poor person shall become a charge to any town, having no settlement therein, the town in which he may have a legal settlement shall be liable for his support."

The circuit court found that at the time the relief was extended Knoll and wife had a legal settlement in the city of *Sheboygan;* that they removed to the town of *Rhine* in October, 1889, and when the relief was furnished, July 1, 1890, they were poor persons without means for their support, and physically disqualified for labor, and in need of aid to obtain food for their sustenance, and that the city defendant was liable for their support. Judgment was given against the defendant accordingly for the amount claimed.

The uncontradicted evidence shows that Knoll owned the premises on which he lived, consisting of three acres of ground, a house thereon, and dance hall connected with it, which he valued at $1,200, and for which he has been offered $1,100, which he refused; subject to an incumbrance of about $450. It was shown that he had kept a saloon or place of entertainment there; that when he applied for aid he told the supervisors of the plaintiff town that he was without means and that if he could not get a saloon license he would be unable to support himself; that he was otherwise without means of support; that he had no means to pay for a license, and wanted to pay for it by monthly in-

The Town of Rhine vs. The City of Sheboygan.

stalments.  At this time he and his wife needed food and clothing.  They were each about sixty-five years of age, and had seven children living in *Sheboygan*, but they were without means.

It is too plain for argument that Knoll and wife were not *poor* persons, within the meaning of the statute under which the action is brought, and the finding of the court to the effect that they were such is clearly erroneous.  In order to entitle a person to relief from a town, and to enable the latter to recover the amount expended against the town or city where such person has a legal settlement, he must be so completely destitute of resources, property, or means of security as to be unable to obtain the absolute means of subsistence.  While such person is possessed of property not absolutely indispensable for daily use, he must apply it to his support by sale or by way of security. It is not the poor man, as contradistinguished from the man of ample means or the rich, that is an object of charity; it is the *pauper*, and not the poor man in the ordinary sense of the term, the man not only in want, but who has no means or resources for relieving it, who is entitled to the statutory aid provided in obedience to the dictates of the humane policy of the statute relating to the poor.  The word *poor* in the statute has a restricted and technical meaning, and it is practically synonymous with destitute, denoting extreme want and helplessness.  Anderson, Law Dict. "Poor;" *State ex rel. Griffith v. Osawkee*, 14 Kan. 421, 422.

As Knoll had property to the value of $600 or $700 over any incumbrance, he was bound to support himself and wife out of it.  The town of *Rhine*, by supplying their necessities under the circumstances disclosed by the evidence, could not acquire a claim for reimbursement against the city of *Sheboygan*, where they had a legal settlement.  Until Knoll and wife had exhausted their resources they could

not be considered as *poor* persons, within the meaning of the statute for the relief of the poor. *Stewart v. Sherman,* 4 Conn. 553, 5 Conn. 244; *Wallingford v. Southington,* 16 Conn. 435; *Peters v. Litchfield,* 34 Conn. 264. Doubtless cases of distress may exist urgently requiring aid before the parties can resort to or utilize their limited resources, not in and of themselves affording credit for immediate relief and pressing want. The spirit of the law, in such exceptional cases, might perhaps justify the extension of aid under the statute, but the evidence wholly fails to show any such case. Under the construction sanctioned by the recovery in this case, the statute for the relief of the poor would become subject to numerous gross and manifest abuses in favor of the undeserving.

For the error in finding that Knoll and wife were poor persons, within the meaning of the statute, the judgment of the circuit court must be reversed, and the cause remanded with directions to enter judgment in favor of the defendant.

*By the Court.*— Judgment is ordered accordingly.

---

Mᴀʏʜᴇᴡ, Respondent, vs. Mᴀᴛʜᴇʀ and another, Appellants.

*May 5 — May 24, 1892.*

*(1, 2) Sale of chattels: Fraud: Rescission.    (3) Court and jury: Finding of undisputed facts. . (4) Judgment in replevin. ·*

1. The defendant M. purchased cheese from plaintiff, who understood that he was selling it to a firm for which M. had made previous purchases as agent; and M., knowing that plaintiff sold the cheese with that understanding, did not undeceive him. *Held,* that no title to the cheese passed to M., and he could transfer no title to another.
2. Plaintiff cashed a check sent him by M. for the amount which the latter claimed to be due on the cheese, but afterwards, on learning