Carthaus, Appellant, vs. Ozaukee County and another, Respondents.

St. Joseph's Hospital of Franciscan Sisters, Appellant, vs. Same, Respondents.

*December 2, 1940—January 7, 1941.*

For the appellants there were briefs by *Schanen & Linley,* attorneys, and *Victor Linley* of counsel, all of Port Washington, and oral argument by *Mr. Linley* and *Mr. Arthur Wickham* of Milwaukee.

For the respondent Ozaukee county there was a brief by *Frank X. Didier,* district attorney, and oral argument by *Mr. Didier* and *Mr. Fred Armstrong* of Madison.

*John R. Cashman* of Manitowoc, and *Patrick A. Dewane,* district attorney of Manitowoc county, for the respondent town of Rockland.

FAIRCHILD, J.  The facts involved in this case relate to care of an injured person by a doctor and a hospital and the question presented is: Who is legally obligated to pay therefor?  The obligation to pay primarily rests upon the individual who had the benefit of the treatment and the hospital services.  It is a debt which should be paid by the individual.  The social obligation resting upon a municipality to see that one in distress does not suffer from neglect does not ordinarily mature into a liability until it has been shown that such an individual is an indigent person and entitled to pauper relief.  No liability is to exist on the part of a municipality in an emergency case under sec. 49.18, Stats., for hospitalization and medical care beyond what is reasonably required by the circumstances of the case "and liability shall not attach unless, within twenty-four hours after admission of the patient, a written notice be mailed or delivered" to the town chairman, village president, mayor, or chairman·of the county board, or some official designated for the purpose.  In sub. (1) of sec. 49.18 it is provided that the proper officer "when in his

opinion reason therefor exists, shall provide temporary medical relief for a poor person, and liability for expenses so incurred shall be the same as though incurred by the board or council." Sec. 49.03 governs cases of *transient* paupers, and sec. 49.18 governs emergency cases involving *resident* paupers. Neither of these sections is brought into play except when an injured person "shall be in need of relief as a poor person" and shall not have money or property with which to pay. In other words, under both statutes a person must be a pauper to be given public aid. The allowance to be made is to be that which the board or council, as the case may be, "shall deem just."

The trial court reached the conclusion that the individual treated in this case was not shown to be an "indigent, a poor person or a pauper." On the trial below appellants offered no evidence to establish a pauper status of the patient. It does appear that he was a young man twenty-two years of age, unmarried, living at home, and one of a large family none of whom had ever been on relief or asked for aid in maintaining themselves. The particular individual involved had been employed for several years before the injury and had earned considerable money. He had purchased an automobile although he had not fully paid for it at the time of the accident, and it appears that he was the average young man maintaining himself. In this state of the evidence, the burden of proof rested upon the appellants to show that Novak had the status of a pauper. But because he had no ready money with which to meet the extraordinary hospital and medical expenses he was to encounter, it does not follow that he was unable, by a fair effort, to discharge a debt which was peculiarly his own. It is a well-known fact that many people in an emergency similar to that facing Novak, pay their doctor's and hospital bills in instalments, and that the time taken to discharge the full debt often extends over many months. The fact that there may be resulting inconvenience

to the doctor or the hospital by reason of the delay, or the fact that a patient must make some sacrifice to pay his bills does not alter the direct obligation, and ought not to shift the responsibility for that indebtedness to the shoulders of others, unless the one treated is destitute of resources or such means of security as to be unable to obtain the means of subsistence. *Rhine v. Sheboygan,* 82 Wis. 352, 52 N. W. 444.

The evidence warranted the inference that at the time of the accident Novak was not an indigent or a poor person or a pauper, and the conclusion of the trial court to that effect must be sustained.

The trial court was also of the opinion that the provisions of sec. 49.18, Stats., governing a case where emergency medical aid and hospitalization are given were not complied with and that no contract, express or implied, existed which bound either of the counties or the town to pay the bills. The section of the statutes controlling in the case of transient paupers is sec. 49.03, but, as pointed out, neither section was aroused by the facts now before us because of the failure to show that Novak was a pauper.

The claim advanced by the appellants that they were misled to their disadvantage is answered by the facts of the case as found by the trial court. The man was injured January 3, 1938. When the county of Manitowoc and the town of Rockland were finally notified that claim might be made against them, they denied responsibility. On February 11, 1938, the district attorney of Manitowoc county advised the director of Ozaukee county public welfare department that the town of Rockland denied liability "because . . . Mr. Novak is not a pauper." The larger part of both bills accrued after that date. The statute, calculated to enable one in an emergency of this character to secure temporary assistance, does prescribe conditions that must be complied with in order to charge the liability upon a community. Serious departure from regulations laid down by the legislature would open

the door to a considerable abuse, for, as already pointed out, many people do not find it convenient to pay their honest debts. "The liability of towns to support poor persons is founded upon and limited by statute, and is not to be enlarged or modified by any supposed moral obligation." *Smith v. Colerain* (Mass.), 9 Met. 492; *Patrick v. Baldwin,* 109 Wis. 342, 349, 85 N. W. 274, 53 L. R. A. 613.

Doubtless it would be of advantage to doctors and hospitals generally to have the collection of their bills assured by the community in which the patient resides, but friends and relatives who may be willing to make loans or enter into some arrangement by which the fair charge for the services rendered may be paid are to be considered. The individual himself is not to be tempted to forfeit his self-respect by providing an easy way to pass his own just obligation to the taxpayers of a small community.

Because of the conclusion reached, it is unnecessary to consider the questions raised as to the authority of the welfare officer to make a contract in a proper case or whether, if such authority exists, such a contract was here made.

*By the Court.*—Judgments affirmed.